UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MU YAN LIN,

                        Plaintiff,

       - against -

BURLINGTON INSURANCE COMPANY,

                       Defendant.

**MEMORANDUM**
**OPINION & ORDER**

11 Civ. 33 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        This case involves an insurance coverage dispute.  Plaintiff Mu Yan Lin obtained a default judgment in state court against Panestone Contracting Corp. ("Panestone") relating to damage Panestone caused to Lin's property.  At the time the damage occurred, Panestone held a comprehensive general liability policy issued by Defendant The Burlington Insurance Company ("Burlington").  In this action, Lin seeks a declaration that Burlington has an obligation to pay the default judgment she obtained against Burlington's insured, Panestone.

        The parties have cross-moved for summary judgment.  For the reasons stated below, Burlington's motion will be GRANTED and Lin's motion will be DENIED.

# BACKGROUND[1]

## I.     THE BURLINGTON INSURANCE POLICY

Burlington issued a comprehensive general liability policy to Panestone, policy number 356B01918, for the period between June 11, 2003 and March 1, 2004 (the "Policy"). (Def. R. 56.1 Stmt. ¶ 1)  The Policy provides, in pertinent part:

### SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

#### 1.  Insuring Agreement

---

[1]  Plaintiff did not file a Local Rule 56.1 Statement in support of her motion nor did she file a response to Defendant's Rule 56.1 Statement.  "Generally, a 'plaintiff['s] failure to respond or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed.'" Young v. Nassau Univ. Med. Ctr., No. 10-cv-00649(JFB)(ARL), 2011 WL 6748500, at *1 n.2 (E.D.N.Y. Dec. 22, 2011) (quoting Jessamy v. City of New Rochelle, 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003) (quoting NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd., 262 F. Supp. 2d 134, 139 (S.D.N.Y. 2003))).  Moreover, Plaintiff's "failure [to file a Rule 56.1 Statement] alone would justify denial of [her] motion." United States v. Kadoch, No. 96 CV 4720(CBA), 2012 WL 716899, at *2 (E.D.N.Y. Feb. 17, 2012) (citing Local Rule 56.1(a); MSF Holding Ltd. v. Fiduciary Trust Co. Int'l, 435 F. Supp. 2d 285, 304-05 (S.D.N.Y. 2006) (denying defendant's motion for summary judgment for failure to submit a Rule 56.1 statement); Searight v. Doherty Enters., Inc., No. 02 CV 0604(SJF)(JO), 2005 WL 2413590, at *1 (E.D.N.Y. Sept. 29, 2005) (denying motion for summary judgment for failure to submit a Rule 56.1 statement)).  "However, district courts are given 'broad discretion to determine whether to overlook a party's failure to comply with local court rules.'" Id. (quoting Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001)).  "Where parties fail to file Rule 56.1 statements of fact, the court may choose to accept all factual allegations of the opposing parties as true for the purposes of deciding the motion for summary judgment, or may alternately 'opt to conduct an assiduous review of the record.'" Id. (quoting Holtz, 258 F.3d at 73).

In her reply brief, Plaintiff argues that her lawyer's March 15, 2011 affirmation "in essence sets forth, with proper citation to the record, separate, short, and concise statements of material facts about which there are no genuine issues to be tried." (Pltf. Reply Br. 1)  Counsel's affirmation is no substitute for a Rule 56.1 Statement, however, particularly given that most of the affirmation's factual assertions are not supported by any citations to the record.  Nonetheless the Court "will deem admitted only those facts in [D]efendant's Rule 56.1 statement that are supported by admissible evidence and not controverted by other admissible evidence in the record." Young, 2011 WL 6748500, at *1 n.2 (citing Jessamy, 292 F. Supp. 2d at 504).

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

\*      \*      \*      \*

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

\*      \*      \*      \*

**2.  Duties In The Event of Occurrence, Offense, Claim Or Suit**

a.  You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:

(1)  How, when and where the "occurrence" or offense took place;

(2)  The names and addresses of any injured persons and witnesses; and

(3)  The nature and location of any injury or damage arising out of the "occurrence" or offense.

b.  If a claim is made or "suit" is brought against any insured, you must:

(1)  Immediately record the specifics of the claim or "suit" and the date received; and

(2)  Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c.  You and any other involved insured must:

(1)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

\*      \*      \*      \*

3

(3)   Cooperate with us in the investigation or settlement of the claim or defense against the "Suit";

\*       \*       \*       \*

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a.    To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b.   To sue us on this Coverage Part unless all of its terms have been fully complied with.

\*       \*       \*       \*

**SECTION V – DEFINITIONS**

\*       \*       \*       \*

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*       \*       \*       \*

18.  "Suit" means a civil proceeding in which damages because of . . . "property damage" . . . to which this insurance applies are alleged.

(Id. ¶ 2; Keizer Decl., Ex. A at TBIC000136, TBIC000144-45, TBIC000147, TBIC000148)

## II.    **THE INCIDENT**

On or about September 1, 2003, Panestone entered into a contract with Tom Lin, Plaintiff's brother, to perform work at a residential property Plaintiff owns at 142-47 Booth Memorial Avenue, Flushing, New York.  (Def. R. 56.1 Stmt. ¶ 3; Jack Decl., Ex. J at ¶ 6; Keizer Decl., Ex. C at TBIC000092)  The contract required Panestone to purchase "Builders Risk insurance to insure both [the] existing house and the remodeling before [the] start [of] the construction" (Jack Decl., Ex. J at Art. 4.2), and to "take responsibility for any damage [that]

arise[s] at the existing house. . . ."  (Id., at Art. 6.7)  As noted above, Panestone obtained a comprehensive general liability insurance policy from Burlington.  (Def. R. 56.1 Stmt. ¶ 1)

On or about November 14, 2003, while Panestone was performing work on Lin's building, the interior was damaged by rain.  (Def. R. 56.1 Stmt. ¶ 3; Keizer Decl., Ex. B at TBIC000106, Ex. C at TBIC000092)  Apparently, "during the roof renovation portion of the work [on Lin's building], [Panestone's] workers failed to secure the premises from water and weather element related damage[,] allowing the interior of the premises to be flooded and damaged."  (Keizer Decl., Ex. B at TBIC000106)  Neither Panestone nor Lin gave notice to Burlington at that time of the potential claim.  (Def. R. 56.1. Stmt. ¶ 5; Keizer Decl. ¶ 4)

Despite the property damage allegedly sustained on November 14, 2003, Panestone continued to work on Lin's building until February 2004.  At that time, Panestone's work on Lin's building apparently ceased, and Panestone refused to repair the water damage. (Def. R. 56.1 Stmt. ¶ 4; Keizer Decl., Ex. B at TBIC000106, Ex. C. at TBIC000092)

## III.  <u>NOTICE TO BURLINGTON</u>

In a February 25, 2004 letter to Panestone , Lin's then attorney – Carmine V. Musumeci – accused the contractor of causing water damage to the interior of Lin's building by failing to "secure the premises from water and weather element related damage" during roof renovation.  The letter requested Panestone's "prompt attention to rectify this situation immediately, due to the negligence of your workers."  (Def. R. 56.1 Stmt. ¶ 5; Keizer Decl., Ex. B)  The local agent who had written the Policy was copied on the letter.  (Keizer Decl., Ex. B at TBIC000107)  On March 9, 2004, the insurance broker on the Policy, Morstan General Agency, Inc., faxed a copy of Musumeci's February 25, 2004 letter, along with a Notice of Occurrence/loss form, to Burlington.  (Def. R. 56.1 Stmt. ¶ 5; Keizer Decl., Ex. B)

IV.   **BURLINGTON'S INVESTIGATION OF THE INCIDENT**

    After Burlington received the insurance broker's March 9, 2004 fax, it hired R.M.G. Investigations, Inc. ("RMG") to investigate the incident and to locate Panestone and/or Andy Wang, Panestone's President.  (Def. R. 56.1 Stmt. ¶ 8)  As part of its investigation, RMG made multiple telephone calls to Wang, sent a letter to Panestone, contacted the broker as well as the local agent for the Policy, contacted a real estate attorney who had referred Lin to Panestone, performed various database and public record searches concerning Panestone and Wang, and made several site visits to locations where it believed Panestone and/or Wang might be located, and interviewed individuals at these locations.  (Id.; Keizer Decl., Ex. C at TBIC000019-20, TBIC000039, TBIC000049-50, TBIC000053-55, TBIC000078-80)  Tim Yang, the local insurance agent who wrote the policy, advised RMG that he had contacted Panestone in March 2004 about an unpaid insurance premium, but had never received a response.  Yang told RMG that Panestone had "go[ne] out of business."  RMG contacted two telephone numbers provided by Yang, without success.  (Keizer Decl., Ex. C at TBIC000049-50)  RMG also sought Plaintiff's counsel's assistance in locating Panestone and/or Wang.  (Def. R. 56.1 Stmt. ¶ 8; March 15, 2011 Gear Aff., Exs. F, G)  RMG was unable to locate Wang or anyone else affiliated with Panestone.  (Def. R. 56.1 Stmt. ¶ 8; Keizer Decl. ¶ 5, Ex. C)

V.   **THE UNDERLYING ACTION**

    On August 17, 2004, Lin filed a complaint against Panestone in Supreme Court of the State of New York, Kings County, Index No. 26059/04 (the "Underlying Action").  (Def. R. 56.1 Stmt. ¶ 9(b)[2]; Jack Decl. ¶ 4, Ex. J)  Panestone did not respond to the complaint, and Lin obtained a default judgment against Panestone on July 29, 2005.  (Def. R. 56.1 Stmt. ¶ 10(b);

---

[2]  Burlington's Rule 56.1 Statement has two paragraphs numbered 9 and two paragraphs numbered 10.  The Court will refer to these paragraphs as 9(a), 9(b), 10(a), and 10(b).

Jack Decl. ¶ 5, Ex. K)  The court scheduled an inquest on damages for November 9, 2005.  (Jack Decl., Ex. K)  On May 3, 2010, the court entered a final judgment against Panestone in the amount of $192,145.[3]  (Def. R. 56.1 Stmt. ¶ 11; Keizer Decl., Ex. F at TBIC000002)  On May 5, 2010, Lin's counsel sent a letter to Burlington demanding that it pay the final judgment amount entered against Panestone in the Underlying Action.  (Def. R. 56.1 Stmt. ¶ 12; Keizer Decl., Ex. F at TBIC000001)

## VI.    BURLINGTON'S DISCLAIMERS

On April 13, 2006, Burlington sent a letter to Andy Wang at Panestone giving the Company "one last opportunity" to assist Burlington in conducting its investigation of Lin's insurance claim.  (Def. R. 56.1 Stmt. ¶ 9(a); Keizer Decl., Ex. D)  The letter made reference to Burlington's repeated and unsuccessful efforts to speak with Wang, and quoted Policy language requiring Panestone to "'cooperate with [Burlington] in the investigation or settlement of [a] claim.'"  (Keizer Decl., Ex. D)  The letter warned Wang that his failure to contact Burlington within thirty days would "**result in a denial of Defense and Indemnity to you, Panestone Contracting**."  (Id.; Def. R. 56.1 Stmt. ¶ 9(a)) (emphasis in original).  Wang and Panestone did not respond to Burlington's April 13, 2006 letter.  Accordingly, on June 12, 2006, Burlington sent another letter to Wang and Panestone advising them that "[d]ue to your failure to cooperate with our investigation of this matter, we are denying coverage to you for [Lin's claim]."  (Keizer Decl., Ex. E; Def. R. 56.1 Stmt. ¶ 10(a))  Lin's then counsel – Carmine Musumeci – and the broker – Morstan General Agency – were copied on Burlington's June 12, 2006 letter to Wang and Panestone denying coverage.  (Keizer Decl., Ex. E)

---

[3]  The parties do not explain the nearly five year gap between the July 29, 2005 default judgment and the entry of final judgment against Panestone on May 3, 2010.

Lin asserts that in response to Burlington's June 12, 2006 letter denying coverage, her counsel – Carmine Musumeci – "forwarded" a letter to Burlington on June 22, 2006 stating that "this matter is in fact, in suit, and your insured has defaulted; a default judgment on liability has been entered and we are proceeding to [an] inquest on damages seeking costs, interests and disbursements.  We intend to seek indemnity from your company thereafter."  (April 6, 2011 Gear Aff. ¶ 8; Keizer Decl., Ex. F at TBIC000003; <u>see also</u> March 15, 2011 Gear Aff. ¶ 19 ("this office responded by letter dated June 22, 2006")  The Burlington claims manager responsible for the Lin claim has submitted a declaration asserting that Burlington did not receive a copy of Musumeci's June 22, 2006 letter until May 2010, when another lawyer in Musumeci's office – James E. Gear – sent a letter to Burlington notifying the carrier that Lin had obtained a judgment against Panestone on May 3, 2010 in the amount of $192,145.  (Keizer Decl. ¶ 8; Def. R. 56.1. Stmt. ¶¶ 12-13)  In his May 5, 2010 letter, Gear demands that Burlington make "payment of the enclosed judgment on behalf of your insured."  (Keizer Decl., Ex. F)  Enclosed with Gear's May 5, 2010 letter was an unsigned copy of Musumeci's June 22, 2006 letter to Burlington.  (<u>Id.</u>)

In a May 21, 2010 letter to Gear, Burlington notes that it had denied coverage in a June 12, 2006 letter to Panestone, and that a copy of that letter was sent to Gear's law firm at that time.  (Def. R. 56.1 Stmt. ¶ 14; Keizer Decl., Ex. G)  Burlington further asserts that it did not receive Musumeci's June 22, 2006 letter:

> The Burlington Insurance Company (TBIC) acknowledges receipt of a judgment against Panestone Contracting Inc. in the amount of $192,145 that you sent to us. This was our first notice that a lawsuit had been filed in this matter.  Your letter dated 5/5/10 makes reference to a letter dated 6/22/06, but we have no record of ever receiving that letter.
>
> We had previously notified Panestone in a letter dated 6/12/06 that TBIC owed no duty to Panestone Contracting Corp (Panestone) under the policy based on Panestone's lack of cooperation as well as an exclusion relative to Fungus, Dry-

rot or Decay.  That letter is incorporated herein as if stated in full.  A copy of that letter was sent to your office.

(Keizer Decl., Ex. G)

Burlington's May 21, 2010 letter goes on to assert that both Panestone and Lin breached their duty to give Burlington notice of Lin's lawsuit, and Burlington denies coverage on this basis:

> Please see the attached letter to our policyholder in which we advise that [Burlington] owes no duty under the policy due to Panestone's failure to notify us of a pending lawsuit.
>
> Your office has knowledge that [Burlington] was the carrier for Panestone, and in fact had communications with RMG Investigations, Inc., the firm we had assigned to investigate liability and damages.  Despite a timely and exhaustive search, our investigators were unable to locate our elusive policyholder.  Your office failed to notify [Burlington] or its investigators about the lawsuit.  We have obviously been prejudiced by your office's failure to send the lawsuit to us, as our first notice of the suit is a judgment.  The plaintiff has a duty to notify us of a suit as soon as practicable, and your office's notice to [Burlington] is late.  Your office has violated the conditions of the policy.
>
> [Burlington] will not indemnify Panestone for this judgment.

(Id.; Def. R. 56.1 Stmt. ¶ 14)[4]

---

[4]  In a May 21, 2010 letter to Panestone, Burlington advised that Lin's attorney had provided a copy of a judgment entered against Panestone.  (Keizer Decl., Ex. H)  Burlington noted that in a June 12, 2006 letter to Panestone, it had disclaimed coverage due to, inter alia, a lack of cooperation by the policyholder.  (Id.)  The letter went on to state that Panestone had

> failed to send [Burlington] written notice of [Lin's] suit as soon as practicable, in violation of the policy conditions.  [Burlington] has been prejudiced by its receipt of the judgment without having an opportunity to defend the matter.  There is no duty under the policy based on this violation of the policy conditions, irrespective of the other issues already noted in this letter.
>
> We previously notified you that [Burlington] had no duty based on your unwillingness to cooperate in our investigation, and also that there would be no coverage available to the extent that the claimant was claiming damage from mold at the premises.  Our position remains unchanged.

9

**VII.    FINDINGS CONCERNING JUNE 22, 2006**
        **MUSUMECI LETTER TO BURLINGTON**

       The Court concludes that Lin has not offered evidence creating a material issue of

fact concerning when the June 22, 2006 Musumeci letter was sent to Burlington.  As noted

above, Burlington has asserted in its Rule 56.1 Statement that it received no notice of Lin's

lawsuit until May 2010.  (Def. R. 56.1. Stmt. ¶ 13)  Burlington's factual allegation is supported

by a declaration from its claims manager for the Lin claim, asserting that Burlington did not

receive a copy of Musumeci's June 22, 2006 letter – giving notice of the Lin lawsuit – until May

2010.  (Keizer Decl. ¶ 8; Def. R. 56.1. Stmt. ¶¶ 12-13; <u>see also</u> Keizer Decl., Ex. G)  Because

Lin has not submitted a response to Burlington's Rule 56.1. Statement, this Court is permitted to

deem admitted Burlington's factual allegations concerning this issue.  <u>Holtz</u>, 258 F.3d at 73;

<u>Young</u>, 2011 WL 6748500, at *1 n.2.

       Even were this Court to consider the Gear affirmations submitted by Lin on this

issue, they do not constitute proof that Musumeci sent a letter to Burlington on June 22, 2006.

The copy of the letter purportedly sent by Musumeci to Burlington on June 22, 2006 is unsigned.

(March 15, 2011 Gear Aff., Ex. J)  Moreover, Lin has not submitted an affirmation or declaration

from Musumeci or anyone else at his firm who purportedly sent a signed version of the letter to

Burlington on June 22, 2006.  Gear's affirmations are of no help in this regard, because Gear

does not assert that he has personal knowledge that the letter was in fact sent in June 2006.  The

Gear affirmations obfuscate this issue by vaguely stating that "this office responded by letter

dated June 22, 2006," and that "plaintiff's counsel forwarded a letter, dated June 22, 2006 [to

---

    [Burlington] will not indemnify you for this judgment. . . . Based on the above, there
    is no duty under the policy.

(<u>Id</u>., Ex. H; Def. R. 56.1 Stmt. ¶ 15)

Burlington]." (March 15, 2011 Gear Aff., ¶ 19; April 6, 2011 Gear Aff. ¶ 8)  It was Musumeci

who represented Lin in her dealings with Burlington and Panestone in the 2004 to 2006 time

period, however (March 15, 2011 Gear Aff., Exs. E, F, H, I; Keizer Decl., Exs. B, C at

TBIC000092-93, TBIC000070-72, TBIC000039), and it is Musumeci's name that appears on the

unsigned June 22, 2006 letter.  Gear is not referenced in or copied on the June 22, 2006 letter.

Given these circumstances, the Court concludes that (1) Lin has not offered evidence

demonstrating that the June 22, 2006 letter was in fact sent to Burlington at that time; and (2) the

June 22, 2006 letter was not provided to Burlington until May 2010.[5]

---

[5]  Under New York law, it is "presume[d] that a letter properly addressed, stamped and mailed
has been duly delivered to the addressee."  De Feo v. Merchant, 115 Misc. 2d 286, 288 (N.Y.
City Ct. 1982).  However, "[p]roof of actual mailing or of an office practice and procedure
followed in the regular course of business, which shows that the notices have been duly
addressed and mailed, is required."  Felician v. State Farm Mut. Ins. Co., 113 Misc. 2d 825, 828
(N.Y. Sup. 1982) (citing Nassau Ins. Co. v. Murray, 46 N.Y.2d 828, 829-30 (1978)); see also
Azriliant v. Eagle Chase Assoc., 213 A.D.2d 573, 575 (2d Dep't 1995) ("[T]he fact remains that
the defendants' denial of the receipt of this letter is uncontradicted.  While a rebuttable
presumption of receipt based on proof of regular mailing may be available . . . we do not believe
that this presumption is available to the plaintiff herein, in the absence of sufficient evidence
attesting to the mailing of the June 5, 1988[ ] letter itself, or to the 'existence of an office practice
geared to ensure the proper addressing or mailing of [correspondence]."").  There is no such proof
here.

Moreover, "[t]he mere assertion that notice was mailed, supported by someone with no personal
knowledge of the mailing, is insufficient to give rise to the presumption of receipt that attaches to
notices duly addressed and mailed."  Washington v. St. Paul Surplus Lines Ins. Co., 200 A.D.2d
617, 618 (2d Dep't 1994) (citing Fritzen v. Allstate Indem. Co., 167 A.D.2d 932, 932 (4th Dep't
1990)); see also Westchester Med. Ctr. v. Countrywide Ins. Co., 45 A.D.3d 676, 676-77 (2d
Dep't 2007) (In support of its summary judgment motion arguing that plaintiff's claim was
premature because it had failed to respond to defendant's verification requests, defendant
submitted a supervisor's affidavit stating that a timely verification request had been mailed.  The
court found that "[t]he supervisor . . . had no personal knowledge that the verification requests
were actually mailed on the dates they were issued, and her conclusory allegations regarding the
defendant's office practice and procedure failed to establish that the practice and procedure was
designed to ensure that the verification requests were addressed to the proper party and properly
mailed.  The defendant's submissions were insufficient to create a presumption that the
verification requests were received by the proper party.") (citations omitted); Triboro
Chriropractic & Acupuncture P.L.L.C. v. Allstate Ins. Co., 13 Misc. 3d 128(A), 2006 WL

## DISCUSSION

## I.   SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when the moving party shows that "there is no genuine issue as to any material fact" and that that she is "entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a).  "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor."  Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citing Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)).  "As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In deciding a summary judgment motion, this Court "resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment."  Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001) (citations omitted).  However, "'[a] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. . . . [M]ere conclusory

---

2670380, at *1 (N.Y. Sup. App. Term Sept. 14, 2006) (Court found that plaintiff was entitled to summary judgment on an insurance claim where "defendant failed to submit proof in admissible form of actual mailing of the letters requesting IMEs [independent medical examinations] and defendant did not create a presumption of mailing by submission of an affidavit describing the standard office practice or procedure used by defendant to ensure that such letters were properly addressed and mailed on the dates claimed.  As a result, the assignor's failure to attend the pre-claim IMEs did not raise an issue of fact warranting denial of plaintiff's motion for summary judgment.") (citations omitted).  Here, Gear's assertions in his affirmations that the June 22, 2006 letter was mailed to Burlington are entitled to no weight, because he has no personal knowledge concerning the alleged mailing, nor has he offered any information concerning the firm's "standard office practice or procedure."

allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist.'" Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)). Instead, the non-moving party must "'offer some hard evidence showing that its version of the events is not wholly fanciful.'" Golden Pac. Bancorp v. FDIC, 375 F.3d 196, 200 (2d Cir. 2004) (quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir.1998)).

"The same standard applies where, as here, the parties filed cross-motions for summary judgment. . . ." Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001) (citing Terwilliger v. Terwilliger, 206 F.3d 240, 244 (2d Cir. 2000)). "[W]hen both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party. Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Id. (citing Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993); Schwabenbauer v. Bd. of Educ., 667 F.2d 305, 314 (2d Cir. 1981)).

## II.   PANESTONE AND LIN DID NOT PROVIDE BURLINGTON WITH TIMELY NOTICE OF LIN'S ACTION AGAINST PANESTONE

The Burlington Policy requires Panestone, in the event of a suit alleging property damage to which the Policy applies, to "[i]mmediately record the specifics of the . . . . 'suit' and the date received; and [n]otify [Burlington] as soon as practicable. You must see to it that we receive written notice of the . . . 'suit' as soon as practicable." (Def. R. 56.1. Stmt. ¶ 2; Keizer Decl., Ex. A at TBIC000144) The Policy also requires Panestone to "[i]mmediately send [Burlington] copies of any demands, notices, summonses or legal papers received in connection with the . . . 'suit.'" (Keizer Decl., Ex.

13

A at TBIC000144).  Burlington asserts that neither Panestone nor Lin gave timely notice

to Burlington of Lin's lawsuit against Panestone, and that – for purposes of a timely

notice determination under the Policy – Lin stands in the shoes of Panestone, the insured.

(Def. Moving Br. 12-13; Def. Reply Br. 4)

     A.     **<u>Applicable Law</u>**

          1.     **<u>Effect of Insured's Failure to Give Timely Notice</u>**

     "If an insured fails to provide timely notice as required by the particular policy,

then, absent a valid reason for the delay, the insurer is under no obligation to defend or

indemnify the insured."  <u>Am. Ins. Co. v. Fairchild Indus., Inc.</u>, 56 F.3d 435, 438 (2d Cir.1995)

(citing <u>Allcity Ins. Co. v. Jimenez</u>, 78 N.Y.2d 1054, 1055 (1991)).[6]  "[W]here [as here] a

contract of primary insurance requires notice 'as soon as practicable' . . . the absence of timely

notice of an occurrence is a failure to comply with a condition precedent which, as a matter of

law, vitiates the contract."  <u>Argo Corp. v. Greater N.Y. Mut. Ins. Co.</u>, 4 N.Y.3d 332, 339 (2005)

(citing <u>Sec. Mut. Ins. Co. of N.Y. v. Acker-Fitzsimons Corp.</u>, 31 N.Y.2d 436, 440-43 (1972)

(failure to notify in a timely manner permits insurer to disclaim coverage)); <u>see also</u> <u>Tower Ins.</u>

<u>Co. of N.Y. v. Miles</u>, 74 A.D.3d 410 (1st Dep't 2010); <u>1700 Broadway Co. v. Greater New York</u>

<u>Mut. Ins. Co.</u>, 54 A.D.3d 593, 593 (1st Dep't 2008) ("Under the terms of a commercial general

liability policy issued by defendant, plaintiff . . . was required to give defendant notice of a claim

or suit as soon as practicable.  Absent a valid excuse, the failure to satisfy this notice

requirement, which is a condition precedent to coverage, vitiates the policy."); <u>Am. Home</u>

<u>Assurance Co. v. Int'l Ins. Co.</u>, 90 N.Y.2d 433, 440 (1997) ("[I]t is settled law in New York that

'[a]bsent a valid excuse, a failure to satisfy the notice requirement vitiates the policy . . . and the

---

[6]  The parties agree that New York law applies.  Accordingly, this Court will apply New York
law in resolving the cross-motions.  <u>See</u> <u>Am. Fuel Corp. v. Utah Energy Dev. Co.</u>, 122 F.3d 130,
134 (2d Cir. 1997).

insurer need not show prejudice before it can assert the defense of noncompliance'") (quoting Acker-Fitzsimons Corp., 31 N.Y.2d at 440).

"'[A] delay may be unreasonable as a matter of law when either no excuse is advanced or the proffered excuse is meritless.'"  Green Door Realty Corp. v. TIG Ins. Co., 329 F.3d 282, 287 (2d Cir. 2003) (citation omitted).  "No showing of prejudice is required" for a carrier to invoke the timely notice requirement.  Nat'l R.R. Passenger Corp. v. Steadfast Ins. Co., No. 06 Civ. 6072(PAC)(GWG), 2009 WL 562610, at *12 (S.D.N.Y. Mar. 5, 2009).  "Where the insured fails to comply with these conditions, the insurer is relieved of its duty not only to indemnify, but also to defend the insured."  New York v. Blank, 27 F.3d 783, 793 (2d Cir.1994) (citing Olin Corp. v. Insurance Co. of N. Am., 743 F. Supp. 1044, 1055 (S.D.N.Y. 1990)).  "The burden of establishing a reasonable excuse or explanation for the delay falls upon the insured."  Centennial Ins. Co. v. Hoffman, 265 A.D.2d 629, 630 (3d Dep't 1999) (citing Bauer v. Whispering Hills Assoc., 210 A.D.2d 569, 571-72 (3d Dep't 1994)).

"New York courts have held that the question whether notice was given within a reasonable time may be determined as a question of law when (1) the facts bearing on the delay in providing notice are not in dispute and (2) the insured has not offered a valid excuse for the delay."  Blank, 27 F.3d 783, 795 (2d Cir. 1994) (citations omitted).

### 2.   Application of Timely Notice Requirement to Injured Party

New York Insurance Law § 3420(a)(2) "authorizes an injured party who has obtained a judgment against the party responsible for the injury – and who is therefore a judgment creditor – to 'institute a direct action against the insurer of the party against whom the judgment was obtained.'"  Continental Ins. Co. v. Atlantic Casualty Ins. Co., No. 07 Civ. 3635(DC), 2009 WL 1564144, at *4 (S.D.N.Y. June 4, 2009) (quoting Sales v. U.S.

Underwriters Ins. Co., No. 93 Civ. 7580(CSH), 1995 WL 144783, at *1 (S.D.N.Y. Apr. 3,
1995)).  "A judgment creditor who brings such an action[, however,] generally 'stands in the
shoes' of the insured vis-à-vis the insurer, and the judgment creditor's 'rights under the policy
are no greater and no less than that of the insured.'"  Id. (quoting Sales, 1995 WL 144783, at *8).

        As to notice, Section 3420(a)(3) "gives the injured party an independent right to
give notice of the accident and to satisfy the notice requirement of the policy.  However, the
injured party has the burden of proving that he or she, or counsel, acted diligently in attempting
to ascertain the identity of the insurer, and thereafter expeditiously notified the insurer."
Spentrev Realty Corp. v. United Nat'l Specialty Ins. Co., 90 A.D.3d 636, 637 (2d Dep't 2011)
(citing Steinberg v Hermitage Ins. Co., 26 A.D.3d 426, 428 (2d Dep't 2006)).  "'In determining
the reasonableness of an injured party's notice, the notice required is measured less rigidly than
that required of the insured[.]'"  Id. (quoting Malik v. Charter Oak Fire Ins. Co., 60 A.D.3d 1013,
1016 (2d Dep't 2009)).  "'The injured person's rights must be judged by the prospects for giving
notice that were afforded him, not by those available to the insured.  What is reasonably possible
for the insured may not be reasonably possible for the person he has injured.'"  Id. (citing
Lauritano v Am. Fid. Fire Ins. Co., 3 A.D.2d 564, 568 (1st Dep't 1957), aff'd, 4 N.Y.2d 1028
(1958)).

    **B.**    **Analysis**

        Lin filed a complaint against Panestone in Supreme Court of the State of New
York, Kings County, on August 17, 2004.  (Def. R. 56.1 Stmt. ¶ 9(b); Jack Decl. ¶ 4, Ex. J)  That
action clearly constitutes a "suit" under the Policy, and Panestone is required under the Policy to
notify Burlington of the suit "as soon as practicable" and to "[i]mmediately send [Burlington]
copies of any . . . legal papers received in connection with the . . . 'suit'[.]" (Keizer Decl., Ex. A

at TBIC000144)  It is undisputed that Panestone never gave Burlington notice of Lin's suit

against Panestone.  (Def. R. 56.1 Stmt. ¶ 13; Keizer Decl., Ex. H)  In bringing this action against

Burlington, Lin must demonstrate that she "expeditiously" notified Burlington of her lawsuit

against Panestone.  Spentrev Realty Corp., 90 A.D.3d at 637.

      The parties dispute when Lin first notified Burlington of her action against

Panestone.  Lin contends that she provided notice of her lawsuit to Burlington on June 22, 2006,

in the form of a letter from her counsel – Carmine Musumeci – to Burlington.  As noted above,

Burlington claims that it did not receive the June 22, 2006 letter until May 2010, and the Court

has ruled that Lin has not offered evidence that creates a material issue of fact as to this issue.

Accordingly, for purposes of resolving the cross-motions, the Court finds that Lin did not

provide Burlington with notice of her lawsuit against Panestone until May 2010.

      Lin has offered no excuse for failing to provide timely notice to Burlington.  Lin

does not dispute that she was aware – when she filed suit against Panestone – that Panestone was

insured by Burlington, nor does she suggest that she had any difficulty in communicating with

Burlington.  Indeed, Lin's counsel was repeatedly in contact with Burlington's agent, RMG

Investigations, Inc., during the Spring and Summer of 2004.  (Def. R. 56.1 Stmt. ¶ 8; March 15,

2011 Gear Aff., Exs. F, G; Keizer Decl., Ex. C at TBIC000039, TBIC000078-80)  Lin likewise

does not claim that she was under the mistaken impression that Panestone would provide

Burlington with notice of the suit; it is undisputed that RMG sought Plaintiff's counsel's

assistance in seeking to locate Panestone and its president, Andy Wang.  (Def. R. 56.1. Stmt. ¶ 8)

      New York courts uphold disclaimers of coverage where an insured or injured

party has failed to provide timely notice of an underlying action.  See, e.g., 1700 Broadway, 54

A.D.3d at 593-94 (where plaintiff did not serve defendant with notice of the underlying personal

injury action until eight months after plaintiff was served with the summons and complaint, and

offered no excuse for the delay, "such delay without explanation constituted late notice as a

matter of law.  Defendant was not required to demonstrate prejudice by reason of the delay in

order to disclaim coverage."); Briggs Ave. LLC v. Ins. Corp. of Hanover, 11 N.Y.3d 377, 380

(2008) ("We hold that a liability insurer is entitled to disclaim coverage when the insured,

because of its own error in failing to update the address it had listed with the Secretary of State,

did not comply with a policy condition requiring timely notice of a lawsuit."); Kahn v. Allstate

Ins. Co., 17 A.D.3d 408, 409-10 (2d Dep't 2005) (finding that lower court properly granted

insurance company's motion for summary judgment where plaintiff did not give notice of his

claim for 67 days and did not provide a copy of the pleading in the underlying action for 74

days); Fisher v. Hanover Ins. Co., 288 A.D.2d 806, 806-07 (3d Dep't 2001) ("[T]he effect of the

undisputed failure of either [the insured] or plaintiff[, the injured party,] to promptly forward the

pleadings in the underlying action to [the insurance company] is that plaintiff now stands in the

shoes of the insured and cannot recover because of the insured's breach of the terms of the

policy").

> Here, this Court finds that Lin's nearly six year delay in notifying Burlington of

her action against Panestone renders her notice untimely as a matter of law.  See DeGeorge v.

ACE Am. Ins. Co., No. 07 Civ. 2761(RPP), 2008 WL 180786, at *3 (S.D.N.Y. Jan. 17, 2008)

("it is plain that Plaintiff's seven-month delay is unreasonable as a matter of law"; "[b]oth

federal and state courts have held that much shorter delays violate prompt notice provisions for

notice of loss and notice of suit"); Fairchild Indus., 56 F.3d at 440 (notice to insurer given three

years after claim was untimely as a matter of law; "[u]nder New York law, delays for one or two

months are routinely held 'unreasonable'") (citations omitted); Am. Home Assurance Co. v.

Republic Insurance Co., 984 F.2d 76, 78 (2d Cir. 1993) (36-day delay in giving notice rendered notice untimely).

## III.    BURLINGTON'S DISCLAIMER WAS TIMELY

### A.    Applicable Law

"In general, an insurer is required to give its insured timely notice of any disclaimer of coverage." Royal Ins. Co. of Am. v. Commercial Underwriters Ins. Co., No. 03 Civ. 8325(NRB), 2004 WL 2609522, at *3 (S.D.N.Y. Nov. 17, 2004).  The "[r]easonableness of [any] delay [in disclaiming] is measured '"from the point in time when the insurer first learns of the grounds for disclaimer of liability or denial of coverage."'" Liberty Ins. Underwriters Inc. v. Great Am. Ins. Co., No. 09 Civ. 4912(DLC), 2010 WL 3629470, at *9 (S.D.N.Y. Sept. 17, 2010) (quoting U.S. Underwriters Ins. Co. v. City Club Hotel, LLC, 369 F.3d 102, 107 (2d Cir. 2004) (quoting Allcity, 78 N.Y.2d at 1056)).  "[D]elay occasioned by a 'reasonably prompt, thorough, and diligent investigation of the claim' does not render the insurer's disclaimer untimely, because an investigation is often necessary to determine whether there is any basis for disclaiming coverage." Webster v. Mount Vernon Fire Ins. Co., 368 F.3d 209, 216-17 (2d Cir. 2004) (quoting In re Prudential Prop. & Casualty Ins. Co., 213 A.D.2d 408, 408 (2d Dep't 1995)).

"New York courts have made clear [that] there is no fixed yard-stick for determining a reasonable versus an unreasonable delay." NGM Insurance Co. v. 52 Liberty, No. 09-cv-09003, 2010 WL 6501383, at * 6 (S.D.N.Y. Dec. 6, 2010).  "[T]his is a fact intensive inquiry that depends on all of the circumstances of the case." Id.  "New York courts have found[, however, that] a disclaimer of coverage issued within a month after the insurer obtains sufficient facts to form the basis of the disclaimer is, as a matter of law, reasonable." Liberty,

2010 WL 3629470, at *9 (citing <u>Lehigh Constr. Grp., Inc. v. Lexington Ins. Co.</u>, 70 A.D.3d

1430, 1432 (4th Dep't 2010) (four weeks); <u>St. Charles Hosp. & Rehab. Ctr. v. Royal Globe Ins.</u>

<u>Co.</u>, 18 A.D.3d 735, 737 (2d Dep't 2005) (just over one month); <u>DeSantis Bros. v. Allstate Ins.</u>

<u>Co.</u>, 244 A.D.2d 183, 184 (1st Dep't 1997) (31 days)); <u>see</u> <u>also</u> <u>Silk v. City of New York</u>, 203

A.D.2d 103, 104 (1st Dep't 1994) (one month).  "The Second Circuit, applying New York law,

has held that a delay of twenty-two days is reasonable as a matter of law." <u>Liberty</u>, 2010 WL

3629470, at *9 (citing <u>Webster</u>, 368 F.3d at 217).

**B.** **Analysis**

Lin argues that Burlington's "notice of disclaimer was untimely as a matter of

law." (Pltf. Reply Br. 5)[7]  It is undisputed that on May 5, 2010, Lin's then counsel – James E.

Gear, another attorney at Musumeci's firm – sent a letter to Burlington demanding that

Burlington pay the final judgment amount entered against Panestone in the Underlying Action.

(Def. R. 56.1 Stmt. ¶ 12)  Burlington asserts that "Panestone did not notify Burlington of the

Underlying Action, and Burlington was unaware of the existence of the Underlying Action,

including the filing of the Underlying Complaint, the entry of a Default Judgment Order against

Panestone, or the entry of a final judgment until it received the May 5, 2010 letter from Lin's

attorneys." (<u>Id.</u> ¶ 13; Keizer Decl. ¶¶ 8-9, Ex. G)  Although Lin contends that Carmine

Musumeci notified Burlington of the Underlying Action in a June 22, 2006 letter, the Court has

concluded that there is no evidence to support that assertion.  Accordingly, the governing date

---

[7]  While Plaintiff broadly asserts that Burlington's disclaimer was untimely, she addresses only
whether Burlington's June 12, 2006 disclaimer – based on Panestone's failure to cooperate – is
timely.  (Pltf. Moving Br. 4-7; Pltf. Reply Br. 5)  As discussed above, however, Lin and
Panestone's failure to give Burlington timely notice of Lin's lawsuit against Panestone provides
an independent ground for Burlington's disclaimer of coverage.  This Court will therefore
consider the timeliness of Burlington's disclaimer based on Lin and Panestone's failure to give
timely notice of Lin's lawsuit against Panestone.

for determining the timeliness of Burlington's disclaimer is May 8, 2010, when Burlington is presumed to have received Gear's May 5, 2010 letter.  Newell v. New York City Dep't of Transp., No. 08-cv-1369(NG)(LB), 2010 WL 1936226, at *2 (E.D.N.Y. May 12, 2010) ("The Second Circuit has held that there is a rebuttable presumption that a mailed document was received three days after its mailing.") (citing Sherlock v. Montefiore Med. Ctr., 84 F.3d 522, 525-26 (2d Cir. 1996)).

It is undisputed that on May 21, 2010, Burlington sent a letter to Lin's counsel advising that Burlington had previously denied coverage to Panestone for Lin's claim, and was also denying coverage for the judgment Lin had obtained against Panestone in the Underlying Action, due to the lack of timely notice concerning Lin's lawsuit.  (Def. R. 56.1 Stmt. ¶ 14; Keizer Decl. ¶ 9, Ex. G)

In New York, the date of disclaimer is the date a disclaimer letter is issued or sent. See, e.g., Liberty, 2010 WL 3629470, at *6 ("Great American provided its disclaimer to Arrow in the June 26, 2009 letter, which was issued twenty-eight days after Great American was served with Arrow's complaint in this action on May 29.  Great American's disclaimer was reasonably timely as a matter of law."); Webster, 368 F.3d at 217 ("Mount Vernon sent its disclaimer on May 30, 2001 . . . . Mount Vernon's disclaimer was not untimely.").  Here, Burlington sent its May 21, 2010 disclaimer letter within thirteen days of receiving notice of the Underlying Action. The Court finds that this delay in disclaiming was reasonable as a matter of law.  See Liberty, 2010 WL 3629470, at *9; Nationwide, 275 A.D.2d at 1012; Silk, 203 A.D.2d at 104.

## **CONCLUSION**

For the reasons stated above, Defendant's motion for summary judgment is

granted and Plaintiff's motion for summary judgment is denied. The Clerk of the Court is

directed to terminate the motions (Dkt. Nos. 12, 44) and to close this case.

Dated: New York, New York
       March 21, 2012

SO ORDERED.

_Paul R. Gardephe_

Paul G. Gardephe
United States District Judge

22